IN THE UNITED STATES DISTRICT COURT FOR

THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 1:17-CR-24 |
| | ) | |
| THOMAS JONATHAN TODD, | ) | The Hon. Michael S. Nachmanoff |
| | ) | |
| Defendant. | ) | Sentencing: April 6, 2023 |

## DEFENDANT'S POSITION ON RESENTENCING

COMES NOW the defendant, Thomas Todd, and hereby states his position with respect to resentencing in this case. The Defendant submits that when all relevant factors are taken into consideration, a sentence of 121 months would be sufficient, but not greater than necessary, to accomplish the purposes of sentencing reflected in the factors enumerated in 18 U.S.C. § 3553(a).

### Procedural Background

In February of 2017, the defendant was charged in an eight count indictment alleging Conspiracy to Commit Hobbs Act Robbery (Ct. 1), Attempt to Commit Hobbs Act Robbery (Ct. 2), Use and Discharge of a Firearm During A Crime of

1

Violence (Ct. 3), Attempt to Possess With Intent To Distribute Marijuana (Ct. 4), Use and Discharge of a Firearm During a Drug Trafficking Crime (Ct. 5), Possession of a Firearm by a Prohibited Person (Ct. 6), Possession of Ammunition by a Prohibited Person (Ct. 7), and Possession of a Stolen Firearm (Ct. 8).

Mr. Todd was tried by a jury in September of 2017, and convicted of all counts. Sentencing was scheduled for March 9, 2018. The sentencing guidelines at the time recommended the 120 month mandatory minimum sentences on each of Counts 3 and 5, to be run concurrent with each other but consecutive to all other sentences, and an aggregate of range of 135 - 168 months accounting for all other counts. The total guidelines recommendation across all counts was 255 - 288 months. (U.S. POS, p. 2, Dkt #164). The sentence imposed by the Court was 192 months.

On appeal, the Court of Appeals for the Fourth Circuit vacated Count 3 (Use and Discharge of a Firearm During a Crime of Violence), and remanded the case back to this Court for resentencing. Pursuant to the sentencing package doctrine, "when a court of appeals 'vacate[s] a sentence and remand[s] for resentencing, the sentence becomes void in its entirety and the district court is free to revisit any rulings it made at the initial sentencing.,'" *United States v. Ventura*, 864 F.3d 301 (4th Cir. 2017) (internal citations and quotations omitted).

## SENTENCING FACTORS

1. **Sentencing Guidelines**.

The defendant does not object to the guidelines as recalculated by the probation officer.[1] The total offense level for Count Group 1 (all remaining counts except count 5) is 25. The defendant's criminal history is category IV, resulting in a guidelines range of 84 - 105 months for Count Group 1. The addition of the 120 month mandatory minimum sentence for Count 5 results in a total guidelines range of 204 - 225 months, which is approximately 20 % lower than the total guidelines range at his original sentencing.

The advisory sentencing guidelines range, however, is but one factor this Court must consider when determining the appropriate sentence pursuant to 18 U.S.C. § 3553. *United States v. Booker*, 543 U.S. 220, 258-260 (2005). There is no presumption that the guidelines recommendation is reasonable. The Supreme Court has emphasized that the guidelines cannot be used as a substitute for a sentencing court's independent determination of a just sentence based upon consideration of the statutory sentencing factors set forth [in 18 U.S.C. § 3553].

---

[1] At his original sentencing, the defendant objected to the application of the 2 level enhancement for obstruction of justice to counts 6-8, on the ground that there could not be a real attempt to obtain false testimony on those charges since it was undisputed that he was found in possession of the firearm and ammunition. (See Dkt. 242, PSR at 41). However, since those counts are now grouped with counts 1, 2 and 4, that objection is no longer pertinent.

*Nelson v. United States*, 555 U.S. 350 (2009); *Spears v.United States*, 555 U.S. 261 (2009).

> Although the sentencing judge is obliged to consider all of the sentencing factors outlined in Sec. 3553(a), the judge is not prohibited from including in that consideration the judge's own sense of what is a fair and just sentence under all the circumstances. That is the historic role of sentencing judges, and it may continue to be exercised subject to the reviewing court's ultimate authority to reject any sentence that exceeds the bounds of reasonableness.

*United States v Jones*, 460 F. 3d 191 (2nd Cir. 2006).

After calculating the advisory sentencing range, the court is then free in light of the other statutory sentencing factors to impose an entirely different sentence, even if it simply disagrees, based on the § 3553(a) sentencing factors, with the Sentencing Guidelines' "rough approximation" of the appropriate sentence for any given case. *Rita v. United States*, 551 U.S. 338, 351 (2007).

The overriding principle that must guide a sentencing court's exercise of discretion in arriving at an appropriate sentence in every case is that the sentence must be "sufficient, but not greater than necessary," to accomplish the purposes of the factors listed in 18 U.S.C. § 3553(a)(2). For the reasons stated below, the defendant submits that a sentence of 121 months would satisfy that requirement in this case.

## 2. The History and Characteristics of the Defendant.

The story of Thomas Todd begins, as does the story of so many other defendants convicted of violent crimes, with the story of childhood trauma. Both he and his sister were molested by their step-grandfather as young children. It is telling that Mr. Todd shared with the probation officer that "he has spent a lot of time 'blocking out' his childhood, noting it is easier to deal with it if he does not think of it." (PSR, ¶ 122, p. 31) (See also, Letter of Brett Bartanen, in Exhibit 1).

This unresolved trauma has had predictably disastrous effects on Mr. Todd's mental health, and subsequently on the trajectory of his life. His mental health diagnoses include bipolar disorder, post-traumatic stress disorder, major depressive disorder, chronic anxiety, paranoid personality disorder, ADHD, and a comprehension disorder. (PSR, ¶ 131, p. 33). He also reports experiencing insomnia and night terrors. (PSR ¶ 133, p. 33). While the defendant reported that he had been "in and out of therapy since the age of 7," and hospitalized at least three times, (PSR ¶ 134), it does not appear that there has ever been any serious long term effort to address his mental health conditions through treatment, other than one 7 month period when he was 14 years old. (PSR ¶ 139, p. 34).[2] The

---

[2] It should be noted that paragraph 141 in the PSR, quoting the defendant as saying that "counseling was no good," therapy was unnecessary, and that he did not want help, is quoted from a pre-sentence report prepared in 2003, referencing psychological testing that was performed when the defendant was between 14-15 years old.

records summarized in the presentence report indicate that he was evaluated and assessed multiple times, and hospitalized on at least one occasion for stabilization through medication, but he has never really received sustained mental health treatment.

With that background and those underlying and unresolved issues, it is not at all surprising that Mr. Todd's adult life so far has featured frequent involvement with the criminal justice system. He does not dispute that he has a lengthy and significant criminal record. None of his prior offenses, though, involved conduct anywhere near as serious or dangerous as that involved in the instant case. Of his prior adult convictions, four were drug and alcohol related, five were larceny or property crimes, two were misdemeanor assaults, five were other miscellaneous misdemeanors, and the rest were traffic offenses. (PSR at 14 - 25). This is not a man with a history of committing serious violent crimes.

The character letters submitted to the Court at his original sentencing, and resubmitted here (Exhibit 1), paint a picture of a man who is much more than just the sum of his criminal convictions.

Longtime family friend Jennifer Bowser describes him as a "good friend to my family." She goes on to explain that

> Whenever he was able to help us with something he did it without being asked and he never asked for anything in return. He has protected my

youngest sister from a man who abused her so badly she was hospitalized for over a week and he helped to make sure that this same person was not able to damage my brother's property when he was working. He took it upon himself to help me protect my family and that is an act of friendship I will never forget.

Another friend and neighbor, Christie Lanone, writes that "[t]he TJ I know was always helpful and considerate. … Whenever he saw me in the yard, he never hesitated to lend a hand." She remembers that "[t]here were many winters after a snow I would look outside and TJ had already begun shoveling my driveway."

The letter from Corinne Reichenthal is especially touching. Mr. Todd went out of his way to befriend and emotionally support an older neighbor who was by her own account "broken" at the time, suffering from the combined effects of depression, PSTD, and debilitating cataracts. She describes his intervention as "perhaps lifesaving" for her, and says that "he has an enormous amount of empathy," and is "[s]omeone with a large heart, a kind soul and a desire to be of service to others."

The defendant acknowledges that he has incurred several institutional infractions during his time in the Bureau of Prisons. (PSR, at 5). However, it must be noted that institutional infractions are not found by the same standard of proof, or with the same level of procedural due process, as criminal convictions, and

7

therefore should not be afforded anywhere close to the same weight. With respect to the most serious of those charges, the possession of drugs or alcohol on 1/13/20, the defendant denies that drugs found in his cell were his, and relates that he passed a subsequent drug test, as he has passed all other drug tests during his incarceration. He states that the three charges of refusal to work in 2018 occurred while he was in segregation after expressing fears for his physical safety from other inmates, and the 2020 refusal to work charges came about when he was again in segregation, this time for complaining about a prison guard (who Mr. Todd says was later fired for misconduct).

 Notwithstanding these explanations, it is clear that Mr. Todd has had a difficult time adjusting while in the Bureau of Prisons, no doubt due in large part to his underlying mental health conditions. Nevertheless, he has done his best to take advantage of the limited opportunities available to him, completing classes on Parenting, Anger Management, Money Management, Whole Numbers, Decimal and Percents, CDL, Life Science, Physical/Earth Science, and Historical Documents. He has also completed a drug education class and should soon begin participating in the Bureau of Prison's Drug Abuse Program. (PSR, at 5).

### 3. The Need For The Sentence To Reflect The Seriousness of The Offense, Promote Respect For The Law, Provide Just Punishment, and Afford Adequate Deterrence.

There is no question that this was a serious offense and a significant degree of punishment is warranted. The defendant submits that a sentence of over ten years is far from insignificant. Moreover, he also contends that a sentence of 121 months in prison would be sufficient to provide adequate deterrence to others who might be tempted to engage in similar behavior. For a similarly situated individual who considers engaging in such conduct, but stops to think about the consequences - including the likelihood of getting caught along with the probable punishment - the prospect of ten years in prison would be more than enough to affect their decision-making process.

### 4. The Need For The Sentence To Protect The Public From Further Crimes of This Defendant.

It is true that incarcerating Mr. Todd will, in the short and mid term, ensure that he is incapable of committing crimes against the general public. In the long term, however, the only thing which will significantly reduce this defendant's likelihood to reoffend is if he receives the mental health treatment has been in such desperate need of for most of his life. That will only begin to happen upon his release and admission to supervised release.

5. **The Need for the Sentence To Provide The Defendant With Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner.**

The defendant has not, is not, and will not get the level of mental health treatment he needs while he is in prison. If anything, prison life is only exacerbating his conditions. A lengthy period of incarceration may arguably serve some of the other goals of sentencing, but it does not serve this one.

## CONCLUSION

For all of the reasons stated above, Mr. Todd submits that a sentence of 121 months would be sufficient, but not greater than necessary, to accomplish the sentencing goals embodied in 18 U.S.C. § 3553(a)(2).

                              Respectfully submitted,

                              THOMAS TODD
                              By Counsel

By:

_____/s/_____
Michael C. Sprano, Esq.
The Sprano Law Firm, LLP
10603 Judicial Drive
Fairfax, VA 22030
703-591-1332
msprano@spranolaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on March 23, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314

By:
_____ /s/_____
Michael C. Sprano, Esquire
The Sprano Law Firm, LLP
10603 Judicial Drive
Fairfax, VA 22030
703 591 1332
msprano@spranolaw.com